Judge Hitchcock
delivered the opinion of the court:
This case has been argued at great length and with much earnestness by the counsel for the respective parties, and some questions have been discussed which it is unnecessary to examine in order to arrive at a correct conclusion with respect to the present motion. The first reason assigned for a new trial is, that the court erred in rejecting the deed and copy of record offered in'evidence-by the defendant. In order to ascertain whether the court erred in this particular, it is necessary to inquire, whether, at the time the order of sale was made by the court of common pleas of Trumbull county, there was any law in force in the state, authorizing such order, or authorizing the sale of the lands of an intestate by his administrator. This land was sold in 1806, in pursuance of an order made by the court of common pleas, at the November term, 1805. Eleazer Paine died, and his administrators were appointed in the year 1804. At the time of their appointment there is no controversy but that his lands, as well as his personal property, might be subjected, if necessary, by his administrators, to the payment of his debts. It will be remembered, however, that dur. *165 ■ing the session of the legislature, commencing in December, 1804, there wasageneral revision of the laws, and material changes made, ■so far as respected "the settlement of testate and intestate estates. Questions growing out of the legislation of this session of the legislature, upon this particular subject, have been repeatedly before the court. In the case of Ludlow’s Heirs v. Johnson, 5 Ohio, 553, it was held, that by.this legislation, lands which, from the year 1795, had been under certain restrictions, assets in the hands of •administrators for the payment of debts, were withdrawn from them, so far as respects solvent estates at least. This case was repeatedly argued, and was not decided until after much reflection -and deliberation. Why this change was made, or what was the policy which dictated it, we know not, nor is it our business to ■inquire.
In that case, the estate was solvent; in the present, it was insolvent. The court were careful to go no further than was necessary for the decision of the case before them, and .^avoided the expression of an opinion upon one, situated like the present, although a doubt was suggested whether there was, in ••this respect, any difference between a solvent and insolvent estate. It is argued, by counsel for the defendant, that the law of Fobruary 11, 1805, “for the distribution of insolvent estates”• (1 -Chase’s Stat. 495), authorizes the distribution of both of the realty and personalty of an insolvent decedent. Before proceeding to •the examination of this act, it is proper to remark that all the laws in force at the time'this law was enacted, touching the subject of the sale of. lands by administrators, had been adopted, or •enacted, by the territorial authorities. There had been no state legislation upon the subject, for the act of February 18, 1804, “defining the duties of administrators on wills and intestate estates” (1 Chase’s Stat. 435), confided to administrators the care of personal property alone. These territorial laws were, most of them, repealed by their titles, but lest some might, by possibility have escaped, on February 22, 1805, there was a general repealing law, putting an end to the operation of all territorial legislation, with the exception of some few private acts, and the laws on the subject of levying a territorial tax. 1 Chase’s Stat. 517. At the same session of the legislature, to wit, the session of 1804-5, the law of February 18, 1804, before referred to, was repealed. ‘The law of February 11, 1805, like all the other general laws, *166 enacted at the same session, took effect on the first of June of that, year. On. June 1, 1805, then, there was no law of the State of Ohio making real estate assets in the hand's of administrators,, under-any circumstances, unless it be this act of the 11th of February of that year, “for the distribution of insolvent estates.”
In giving a construction to this statute, it will not do to have-reference to any prior legislation to remove anything doubtful, unless that legislation is expressly, or by implication referred to.. It must, as far as possible, be construed by its own terms, or, if we look to other legislation, it must be that which is contemporaneous, and which is most intimately connected with the same subject. This is' the more necessary, as on the very day this law took effect, all prior laws with respect to the settlement of estates,, testate or intestate, solvent or insolvent, were repealed. The only one enacted by the legislature, at the same session, that can be. considered as having, in any shape, reference to the same subject-matter, is the law of February 1,1805, entitled an *act “ defining the duties of administrators on wills and intestate estates, and for the appointment of guardians.” 1 Chase’s Stat. 496. No-one can for a moment doubt, from an examination of this law, that, it was the intention of the legislature that administrators should have nothing to do with the realty. The general duties of ministrators are prescribed, the manner in which the personal property shall be disposed of, and the time within which the settlement of the estate shall be made. In this act nothing is said as to the solvency of the estate, and no provision is made for distribution, if it should prove insolvent.
The system, then, was incomplete without the law of February-11, 1805, “directing the distribution of insolvent estates” (1 Chase’s Stat. 495) ; and it seems to me that this latter law may be-considered as nothing more or-less than a supplement to the-former. Taking the two together, provision is made for the settlement of both solvent and insolvent estates, but in neither caséis express provision made for the disposition of the real estate of the intestate or testator.
It may be proper, however, to be a little more specific in our-examination of this law. The first section provides, that when an estate is found to be insufficient to pay all the just debts of the. deceased, the executor, or administrator, shall represent the fact. - .to the court of common pleas, and if t.he court is satisfied that the.
*167 estate is insolvent, they are required to appoint two or more trustees. By section 2, it is made the duty of the trustees, and the executor, or administrator, to meet on a day to be appointed; and the trustees are required to adjust all the accounts exhibited,, “ and make equal distribution to the creditors severally, in proportion to the amount of their accounts as adjusted, aiter first deducting out of the estate the physician’s bill, the debts incurred during the last sickness, and the funeral expenses of the deceased,, all the expenses necessarily arising on the settlement of the estate, and also saving to the widow her right of dower and bed, with the useful furniture thereunto belonging, and her wearing apparel, etc. Section 3 provides that creditors who shall not have presented their claims, shall be barred, unless under peculiar circumstances; and the fourth directs the trustees in what manner to make their returns.
There are some expressions, it is true, in this statute, which, taken by themselves, would lead to the conclusion that the intention was, that the whole estate, whether real or personal, of an ^insolvent should be distributed among his creditors in proportion to their respective demands. The widow’s “ right of dower ” is secured, and in strict legal parlance this right grew out of, or is attached to lands alone; still the law does not expressly mention real estate, nor does it contain any provision as to the manner in which it should be disposed of. The act of 1802, upon the same subject, 1 Chase’s Stat. 357, which was repealed by this act,is explicit upon this point, and, if it was the intention to continue the same principle, it is strange that it should not have been expressly provided for, especially when we consider that there was no other law in force from which it could be deduced. Upon mature deliberation, we are inclined to consider this act as supplementary to the act “defining the duties of administrators,” etc., and are of opinion, that neither the one nor the other authorized personal representatives, under any circumstances, to dispose of the real estate of a testator or intestate.
Of course, the sale of the lands of Eleazer Paine, by his administrators, was without authority, and the deed offered in evidence was properly rejected as proof of title in the defendants. The copy of record, too, was properly rejected for the same reason. The court had no authority to make the order of sale, and that order was consequently void.
*168 It is insisted, however, that this deed, although void as conveying title, should have been allowed to go in evidence to show color of title. In the view which we take of the case, it is unnecessary to decide this point. It may not, however, be improper to remark, that there are circumstances which will induce a court to permit a deed to go in evidence to a jury fora particular purpose, as-to show the extent of a claim of possession, although the same deed must be rejected as evidence of title. 7 Ohio, pt. 1, p. 53.
The second reason assigned for a new trial is, that the court erred in instructing the jury, that an actual exclusive possession of land by the defendants, under claim of title, for twenty-seven years, would not entitle them to the protection of the statute of limitations.
It is proper to remark that, in giving this instruction, the court did not intend to express a deliberate opinion upon the point raised, but as it was deemed proper, on account of the point already discussed, that the case should be reserved, this'instruction was given, that the important questions arising in the case might be settled in bank.
^Numerous authorities have been cited-to sustain the position, that adverse possession, without color of title, will not be protected by a statute of limitations. It is unnecessary to examine these authorities, as we have no doubt that such is the law in the State of New York, and in some of the other states of the Union. In some, however, if not in all the states, where this principle prevails, it is owing to the particular phraseology of their limitation laws. In other states, as in Pennsylvania, South Carolina, and Kentucky, the decisions have been otherwise. Reference has been made to some of the decisions of the Supreme Court of the United States. Upon this particular point, those decisions are of no more binding force than the decisions of the courts of the states, for in deciding upon state laws, that court follows the construction given by the state courts. Before the decision of a court of another state, giving construction to a statute of that state, can be obligatory here, it must be shown that the statute construed, is substantially, if not literally, like our own. Even if it be so, the decision is not obligatory, although entitled to the highest respect.
The act “for the limitation of actions,” passed January 4, 1804 (1 Chase’s Stat. 392), provides, in section 2, “that no person *169 or persons shall hereafter sue, have, or maintain any action -of ejectment, or other action for the recovery of any possession, -title, claim of, to, or for any lands, tenements, or other hereditaments, but within twenty years next after the right of such actions, or suits, shall have accrued.” This was the law in force at the time the right of action accrued in the case now before the court, ■and by which it must be decided. It would seem that this language was explicit, and could not be misunderstood. Nothing is said about color of title, and I know not by what authority this court is authorized to make the interpolation. In the present case, at least, it is not necessary for the furtherance of justice. When does a right of action accrue in ejectment? Unquestionably when the person having the right of possession is divested of that possession. When did the right of action accrue in the present case? In 1806, when Skinner took possession, and before this action was brought, more than twenty-seven years had elapsed. How can we say that the statute can not operate, because there is no color of title? It would be defeating the obvious meaning and intent of the law. The uniform construction hitherto given to this statute has been that the possession under which a person .claims to be protected, must be continued, exclusive and adverse; ^and this we believe to be the true construction. Whether there is, or is not, color of title, is wholly immaterial. We are -of opinion, therefore, that the court erred in the instruction complained of.
It is urged, however, that if the court erred in this particular, still that a new trial should not be awarded, because Skinner was acting as trustee for the plaintiff, and the possession of a trustee will not operate as a bar under the statute of limitations. If we are correct in the opinion that the administrators had no power over the lands, then, as to these, Skinner was not a trustee, and the .argument fails.
Again, it is urged that the deed of Skinner was fraudulent; and having obtained possession under a fraudulent deed, he, or those claiming under him, can not be protected under the statute. Where is the evidence of fraud? The administrators of Eleazer Paine supposed that they had a right to sell his lands for the payment of his debts. They had the right when they were appointed, ■and the court, by whom they were appointed, supposed they had 'the right, and made an order accordingly. In pursuance of thi.s *170 order the lands were sold and Skinner became one of the purchasers. For this land he paid his money, and that money went in part payment of the intestate’s debts. The widow, of that intestate, and the mother of the lessors of the plaintiff, was one-'of those administrators; and now these lessors, alter a lapse of nearly thirty years, are seeking to recover these lands discharged of the debts of their ancestor, and without any offer to refund what Skinner has paid toward those debts. If there be any fraud in the case, it is not on the part of the defendants or those ui der whom they claim.
A new trial will be granted, the costs to abide the even) *f' the suit.