that which it was bound to do under the law, and thereby reserved all of his rights under the statute. In the case under consideration we find a petition of an entirely different character. Winters, in his petition to the city of Dayton, proposed to pay his proportion of the whole cost and expense of the improvement of Madison street, and that an assessment might be levied on his said lot (709) abutting on Madison street for 156¾ feet, the entire length of said lot. In the one case the petitioner expressly reserved all of his rights under the statute so far as paying for the improvement was concerned; and in the other, the petitioner expressly waived all of his.

Now, as ot Edwards v. Columbus, supra. In this case the plaintiff petitioned for the improvement of the street on the side of his property, and represented that he owned frontage to the extent of 150 feet, the real front being of a much less number of feet. The court held that inasmuch as in Columbus the city could make the improvement without a petition from the property owners, the doctrine of estoppel did not apply, and that the case of Cincinnati v. Manss, supra, had no application. Neither is it necessary in Dayton for the property owners to petition for an improvement of this character. But suppose, as in this case, the property owner did petition, and agree to pay all the cost and expense of the improvement, and the city being induced thereby goes forward in good faith, makes the improvement and issues its bonds for the payment of the same, would not then the doctrine of estoppel apply? We say yes.

Again, the facts in the Edwards case are essentially different from the facts in this, and hence that case has no application to the one under consideration. If the city of Columbus was induced to make the improvement by the petition of Edwards and others, and acted upon same in good faith, we say he was estopped, notwithstanding the petition was not necessary; and if he represented that he had a certain number of assessable feet, he was bound by his representations. To hold otherwise would be in direct conflict with Cininnati v. Manss, supra. Where the court say, (page 263,) "What he represents in the petition, must, as against him, be taken as true. He is estopped to say otherwise."

Again, the case under consideration is founded on the 25 per cent. limitation, while the Edwards case was based on the rule adopted as to corner lots.

This court does not undertake to hold that if a person merely files a petition for an improvement, that, of itself, works an estoppel. In such case the petitioner will only be estopped from denying the power of the city to grant his petition. See Tone v. Columbus, 39 Ohio St. 281.

In the case at bar we have a written proposition from Winters requesting the city authorities to make the improvement, and in his proposal he agrees to pay the whole cost and expense of the same. The city re-

lying upon his proposal being made in good faith, accepts it, goes forward and completes the improvement and issues its bond for the payment of the same. We say that the written proposal of Winters, the acceptance of the same, and the subsequent performance of the work in compliance with the provisions of the proposal, on behalf of the city, constituted a valid contract between the parties, subject to all the rules governing the enforcement of contracts. See Street R. R. Co. v. Village of Carthage, 36 Ohio St. 631.

We therefore hold that if Winters were a party to this suit, he would, by his conduct, be estoped from denying the legality of the assessment upon every principle of equity and natural justice, and that his grantees, and those who claim under and through him, stand in his shoes, and are also estopped. See Columbus v. Slyh, 44 Ohio St. 485.

The discussion of this question has taken wider range than necessary or intended, and the only apology we have to offer is that there are scores of other cases, heard and pending in this court, involving the same question, and other questions covered by this opinion, and that the decision in this case is a finality as to all others, so far as this court is concerned.

The temporary restraining order will be dissolved, and petition dismissed at plaintiff's costs.

R. M. Nevin and W. B. Nevin, for plaintiffs.

E. P. Matthews, City Solicitor, for defendant.

---

(Hamilton County Court of Common Pleas.)

G. H. SCHULTE, et al. v. ANNA BEIN-EKE, RUDOLPH OBERDING, et al.

*Co-Tenancy—Adverse possession of one co-tenant against the other—Presumption—Ancient grant—*

Where real estate originally purchased by J. H. S. and F. W. S. in 1842, the title being taken in the name of both parties, has always been in the possession of J. H. S. and his heirs since the time of the purchase, and said property has been improved, the taxes upon the same paid, and numerous overt acts of ownership exercised over the same, since 1842 to 1896, indicating an ouster of F. W. S. by J. H. S. and his heirs; in a suit to quiet title as against the heirs of F. W. S. after such lapse of time,

Held, that as a presumption of ancient grants and deeds grows out of long, uninterrupted possession of property, length of possession being the great leading fact in presuming grants and deeds, a court of equity will presume a grant from F. W. S. to J. H. S., and will quiet the title to the same in the heirs of J. H. S.

S. W. SMITH, Jr., Judge:

The plaintiffs in this case say that they are the owners in fee simple and are in act-

ual possession of the following described real estate, to-wit: All that certain piece of ground, block F., being on the south side of said block, which is a part of a division made by John James Findley and J. D. Garrard, recorded book 47, page 319, of the records of Hamilton county, said lot beginning at the corner of Green and Pleasant streets, thence east, eighty five feet to Bovehilt lot, thence northwardly along said line twenty-five feet, thence westwardly twenty-five feet to the east side of Pleasant street, thence southwardly twenty-five feet to the place of beignning; and that they have been in notorious, quiet, peaceable, undisturbed and adverse possession of said real estate for a period of more than twenty-one years last past.

All of the defendants excepting Rudolph Oberding, are in default for answer; and said Oberding denies the allegations of the petition, and says that he is the sole heir-at-law of Lillie Oberding, daughter of Mary Oberding, and that the said Mary Oberding was one of the heirs at-law of Frederick William Schulte, and in that he is entitled to an undivided one-eighth part of the premises described in the petition, and prays for a partition of said premises, and for an accounting of the rents and profits thereof.

The evidence in the case shows that John Henry Schulte and Frederick William Schulte, in 1842, became the owners of the property described in the petition. That John Henry Schulte died in July, 1849. That Frederick William Schulte was appointed his administrator and closed his estate. That in February, 1858, Frederick William Schulte died, and that all of his real estate was sold in the Probate Court to pay his debts. That after the death of John Henry Schulte, his widow and children remained in possession of the property in controversy and erected on it a three story brick building, from which they always collected the rents. That the property stood in the name of John Henry Schulte upon the tax duplicate from that time until the present. That the taxes were paid during all that time by the heirs of John Henry Schulte, and the improvement of the streets was paid for by John Henry Schulte or his heirs, during this period.

Oral testimony of old citizens also shows that Frederick William Schulte stated that he had sold this property to his brother, John Henry Schulte; and at the time of the death of said Frederick William Schulte, no account of this property was taken by his administrator; and that the said John Henry Schulte and his heirs since 1842 have been in possession of the same.

It is also admitted and proven in the case that all of the heirs of Frederick William Schulte, have made deeds to the heirs of John Henry Schulte, for any interest, if any, they may have in the property in question.

Plaintiffs ask by reason of their long possession, and which they claim is adverse,

that the title be quieted against the defendant, Rudoph Oberding; and claim that the property was conveyed to John Henry Schulte by the said Frederick William Schulte, but that the deed for the same was lost, mislaid, and not recorded.

Defendant's objection and contention is that, first, there must be color of title in the plaintiffs; and second, that the statute of limitations is not a bar where parties hold as co-tenants.

The first objection is not good, for the reason that color of title in an occupant is not necessary under the statute of limitations in Ohio. See Paine v. Skinner, 8 Ohio 159, at page 165-167. Yetzer v. Thoman, 17 Ohio St. 130; McNeeley v. Langan, 22 Ohio St. 32, at page 37.

In Paine v. Skinner, in speaking on this subject, the court says:

"It would seem that this language was explicit and could not be misunderstood. Nothing is said about color of title, and I know not by what authority this court is authorized to make the interpolation. * * *. Whether there is or is not color of title is wholly immaterial.

As to the question of the statute of limitations running against a co-tenant, of course the possession of a co-tenant or his heirs, who is asserting the statute of limitations must be wholly adverse, open and notorious, and overt acts must be shown on his part to indicate an ouster. And while the evidence in this case may not be so strong as in many in which the statute of limitations has barred a co-tenant, yet it would seem that perhaps the notorious, open, continuous, adverse possession was sufficient, taken in connection with such overt acts as have been committed.

Without, however, being bound by this question, the court feels that the plaintiffs in possession have a much stronger claim in equity, and that they are protected by the presumption of a grant.

The presumption of ancient grant grows out of the long and uninterrupted possession of the property.

"Length of possession is the great leading fact in presuming grants and deeds, and without which no grant or deed can be presumed." Baltimore Chemical Co. v. Dobbin, 23 Md. 210; Kinsman's Lessee v. Loomis, 11 Ohio 475; Blake v. Davis, 20 Ohio 231. "It springs from possession. It is raised to support a possession." 11 Ohio 478.

This rule is best laid down in the case of Fletcher v. Fuller, 120 U. S. 534, in which Justice Fields says:

"The owners of property, especially if it be valuable and available, do not often allow it to remain in the quiet and unquestioned enjoyment of others. Such a course is not in accordance with the ordinary conduct of men. When, therefore, possession and use are long continued, they create a presumption of lawful origin; that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It may

be, in point of fact, that permission to occupy and use was given orally, or upon a contract of sale with promise of a future conveyance which parties have subsequently neglected to obtain; or the conveyance executed may not have been acknowledged so as to be recorded, or may have been mislaid or lost. Many circumstances may prevent the execution of a deed of conveyance to which the occupant of land is entitled, or may lead to its loss after being executed. It is a matter of almost daily experience, that re-conveyances of property transferred by the owners upon conditions of trusts are often delayed after the conditions are performed, or the trusts discharged, simply because of the pressure of other engagements and the conviction that they can be readily obtained at any time. The death of parties may leave in the hands of executors or heirs, papers constituting muniments of title of the value of which the latter may have no knowledge, and therefore for the preservation and record of which may take no action; and thus the documents may be deposited in places exposed to decay and destruction. Should they be lost, witnesses of their execution or of contracts for their execution may not be readily found; or if found, time may have so impaired their recollection of the transactions that they can only be imperfectly recalled and, of course imperfectly stated. The law in tenderness for the infirmities of human nature, steps in, and by reasonable presumptions that acts to protect one's rights, which might have been done, and in the ordinary course of things would be done, have been done in the particular case under consideration, affords the necessary precaution against possible failure to obtain or to preserve the proper muniments of title, and avoids the necessity of relying upon the fallible memory of witnesses when time may have dimmed their recollection of past transactions, and thus gives peace and quiet to long uninterrupted possession.

"The rule of presumption in such cases has been well settled, and is one of policy as well as of convenience, and necessary for the peace and security of society."

Applying this, therefor, to the case at bar, we find that John Henry Schulte and his heirs have been in the actual open possession of the premises described in the petition, since 1842; that in 1849, John Henry Schulte died, and that his brother, Frederick William Schulte, under whom the defendants claim, lived in the neighborhood, made no objection to the possession, saw the improvements made upon the property by the widow of John Henry Schulte, and upon his death in 1858, no account of this property was taken by his administrator as an asset of his estate. That the heirs of said John Henry Schulte, still continued in possession of said property, collecting the rents, paying the taxes, improving the same, from that time on until the bringing of this suit; the only person objecting to the suit being Rudolph Oberding, who in 1867, married Lillie Schulte, daughter of Frederick William

Schulte, and by her, and through her child, the mother dying first, in 1868, claims to have a life estate in one eighth of the property by reason of being heir to this child; which child lived but six months. And after 1868, the heirs of said John Henry Schulte still continued in the same actual possession of the premises as they always had.

It would seem, therefore, that after such a lapse of time, over fifty years, the claim of Rudolph Oberding, if not barred by the statute of limitations, at least is cut out by the rules of equity. The rule of presumption of a deed rests upon considerations of convenience based upon the general infirmity of human nature, and the danger of loss or destruction of muniments of title to property. And the law is clearly settled and firmly applied that when the facts show the long continued exercise of a right, the court is bound to presume a legal origin, if such be possible, in favor of the right. It is not necessary to show the probabilities of a conveyance in order to lay a foundation for the presumption; but it is sufficient to show that by legal possibility the conveyance might have been made. It follows that in order to repel or destroy the presumption when it arises upon the proofs in the case, such facts must be shown as establish the legal impossibility of the supposed existence of a conveyance. That is, the facts must establish that it was legally impossible that a conveyance could have been executed.

In this case, there is no such proof. On the contrary, the facts show that Frederick William Schulte could legally have conveyed his interest in the property to his brother, John Henry Schulte. Zeller's Lessee v. Eckert, 4 How. 289-297; Williams v. Donnell, 2 Head 695; McCarthy v. Gallagher, 8 Ohio 512; Fitzpatrick v. Forsythe, 7 Amer. Law Rec. 411.

Among other things said by Justice Field in the case of Fletcher v. Fuller, 120 U. S. 545, is the following:

"In such cases presumptions, as said by Sir William Grant, do not always proceed on a belief that the thing presumed has actually taken place. Grants are frequently presumed, as Lord Mansfield says in Eldridge v. Knott, Cowp. 215, merely for he purpose and from a principle of quieting the possession. There is much occasion for presuming conveyances of legal estates, as otherwise, titles must forever remain imperfect and in many respects unavailable, when from length of time it has become impossible to discover in whom the legal estate is actually vested. Hilary v. Waller, 12 Ves. 239.

"It is not necessary therefore in the cases mentioned, for the jury, in order to presume the conveyance, to believe that a conveyance was in point of fact executed. It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed, and that its existence would be a so-

lution of the difficulties arising from its non-execution."

While the courts usually apply the doctrine of presumption in analogy to the statute of limitations, they do not adhere rigidly to this rule either as to time or other elements of the statutory bar, and if there has been a long-continued actual occupation of the land, a grant may be presumed from occupancy for a period short of the statute where other circumstances justify it. Ricard v. Williams, 7 Wheat. 59,110; Fletcher v. Fuller, 120 U. S. 534 550; Fuller v. Fletcher, 44 Fed. Rep. 34-36; Phillippi v. Phillippi, 115 U. S. 151-159; Balkhan v. Woodstock Iron Co., 43 Fed. Rep. 648.

In other words, if, in equity, the possession and actual occupation is such as from all the circumstances the court would presume a grant, then the court will enforce and allow a claim although it may fall short of the statutory time of limitations.

The fact of the purchase by the heirs of John Henry Schulte of any claim or interest which the heirs of Frederick William Schulte may have asserted, or may have believed they owned in the premises, is nothing of which other claimants can avail themselves, for the reason that anyone would have a right to purchase any out-standing claims he might believe existed against his property. This was decided by Judge Taft in the case of Elder v. McCloskey, 70 Fed. Rep., 529. By such purchases the plaintiffs simply fortify their title against any cloud or pretended out-standing claim, and this they had a right to do without prejudice to their possession.

The court's conclusion therefore is, and as in the case of Fletcher v. Fuller, supra, that the claim to the land in controversy by the plaintiffs and the ancestors in title for over half a century, with the payment of taxes thereon and acts of ownership suited to the condition of the property, and its actual use during all those years, will justify the presumption of a deed from Frederick William Schulte to John Henry Schulte, to quiet the possession of the plaintiffs; and a decree may therefore be taken accordingly.

Von Seggern, Phares & DeWald, Attorneys for plaintiffs.

Joseph Cox Jr., Attorney for defendants.