ADAM SCHAEFFER V. JOSEPH CLAUDA ET UX.

1. EASEMENT BY GRANT TO ALLEYWAY BARRED BY CLAIMANT'S ACT.

When the right to use a strip of land of an adjoining owner as an alleyway is founded upon reservations in deeds providing for an alleyway across both properties, through which both parties trace their title, the fact that the claimant has built upon the strip so reserved through his own property is a bar to any claim to such easement by grant in the property of the adjoining owner.

2. EASEMENT BY PRESCRIPTION DOES NOT REQUIRE DAILY USE.

An easement by prescription to a right of way in the lands of an adjoining owner is not defeated by the fact that the claimant's use thereof was not daily, but only occasional, where it sufficiently appears that such use was continuous.

APPEAL by plaintiff.

J. H. Hardy, W. T. Clark, for plaintiff.

T. H. Johnson, for defendants.

WINCH, J.

Plaintiff is the owner of the northerly half of sublot No. 16, in Robertson's subdivision of part of original lots Nos. 329 and 332 in the city of Cleveland, Cuyahoga county, Ohio, and defendants own the southerly half of said lot.

Said lot No. 16 is on the northwesterly corner of Pier and Beaver streets, and is about 165 feet deep, so that the defendants own the corner lot and plaintiff has the inside lot. He claims a right of way over the rear twelve feet of defendant's premises to the rear portion of his lot, with the right at all times to pass and repass through and over the same on foot and with teams.

Plaintiff bases his claims upon two grounds: First, by grant, and second, by prescription.

As tending to prove his claim by grant plaintiff traced the title to both parts of the lot from a common owner and showed that on June 10, 1872, one Sanford L. Kennedy was the owner of the whole lot and on said day contracted in writing to sell it to Adam Burghardt and Adam Schaeffer, it being stipulated in the contract that " the said Kennedy is to make deeds to said parties of the second part, when the conditions of this contract have been complied with as follows, to wit, Adam Burghardt is to have the

south one-half of said lot No. 16 and Adam Schaeffer the north one-half of said lot, and the parties of the second part hereby agree to open an alley twelve feet wide in the rear of said lot."

The parties went into possession under this contract, and on January 20, 1873, a deed was made to plaintiff. of his half of the lot, containing the clause: "The grantee hereby agrees to open an alley twelve feet wide in the rear of said lot."

A deed to the corner lot containing the same agreement concerning an alley was made to Adam Burghardt, and he built a house upon his lot in 1873 and a coal shed and outbuildings upon the rear part of his lot, leaving thirteen feet in the rear thereof; that is, he built nothing upon the twelve feet which he had agreed to open as an alley.

On Beaver street he built a fence back to his coal shed and in the rear of his coal shed he placed a gate, closing the twelve-foot strip which was to be opened as an alley.

Plaintiff built a house the following year (1874), so constructing it as to leave no driveway from Pier street on either side of his lot. He built a coal shed upon the extreme rear of his lot opening to the alleyway or twelve-foot strip in the rear of Burghardt's lot. The gateway on Beaver street and the coal shed on the plaintiff's lot have continued down to the present day, so that it is apparent that no "alley twelve feet wide," has ever been opened.

May 4, 1874, Burghardt sold the corner lot to one Neal, inserting in the deed the same clause about opening an alley; and on March 7, 1883, Neal sold to defendants, but the last deed contained no clause about the alley.

The agreement to open a twelve-foot alley contained in the several deeds referred to must mean a public alley, yet from the beginning the owners of both lots have uniformly denied the public any rights in said twelve-foot strip of land.

Jones, Real Property in Conveyancing Sec. 530, says:

"A reservation expressed to be in favor of the public confers no rights in favor of any one except the grantor, though there are intimations in some cases that such a reservation is valid in favor of the public. The reservation in such case may operate as an exception from the grant, and as notice to the grantee of adverse claims or rights as to the thing reserved."

The plaintiff has not sued as one of the public for the opening of this alley. By his own acts in building upon that part of the alley which he agreed to open upon his own lot he has barred himself from claiming the twelve feet to be a public alley, and applying the rule laid down by Jones,

Real Property, *supra,* the condition, reservation or exception contained in the deeds to the corner lot confer no rights in favor of the plaintiff. It thus appears that so far as he rests his claim upon a grant, the plaintiff must fail.

To establish his rights by prescription, plaintiff must prove that the use and enjoyment of what is claimed as an easement was "adverse, under a claim of right, exclusive, continuous and uninterrupted, besides being within the knowledge and with the acquiescence of the owner of the estate over which the easement is claimed." Cleveland, C., C. & St. L. Ry. Co. v. Huddleston, 21 Ind. App. 621 [52 N. E. Rep. 1008] ; Paine v. Skinner, 8 Ohio 159 ; McNeely v. Langan, 22 Ohio St. 32, 37 ; Pavey v. Vance, 56 Ohio St. 162 [46 N. E. Rep. 898].

The testimony is uncontradicted that plaintiff from the time he built his coal shed in 1874, down until the defendants purchased in 1883, claimed the right to and did use the alleyway in order to put in his coal; his milkman and others delivering goods to him used it. Both he and his wife testify that they had a key to the gate on Beaver street, which was the only key to it, although defendants say the gate was never locked after they purchased the corner lot until 1899. This use was not only adverse, but was acquiesced in by Burghardt, who first owned the corner lot, as shown by the manner in which he located his coal shed and outbuildings, leaving thirteen feet in the rear of them leading to plaintiff's coal shed.

Plaintiff's use of the alleyway cannot be referred to a claim on his part that the premises in dispute was a public alley. Such inference is rebutted by the maintenance of the gate and location of plaintiff's coal shed.

The defendants testify that a day or two after they moved onto the corner lot in 1883 they observed the plaintiff using the alley for access to his coal shed. They say that they asked him why he was doing it and he replied that he had a right to—that it was in his deed. They replied that it was not in their deed, but so long as the plaintiff was neighborly he might use the alley. All this conversation was denied by plaintiff and his wife; but assuming that it took place, it shows that plaintiff then claimed the right to use the alley and defendants acquiesced in it. It does not show that plaintiff for one moment admitted that he had no right to use the alley, or sought, desired or accepted the permission of defendants to use it. He so stood upon his rights that, defendants say, they consulted their lawyer, who looked up former deeds in their chain of title and gave them actual knowledge of the agreement for an alley contained in the deed to Burghardt and others, of which the law held them to have constructive notice. They had notice of plaintiff's claim before they purchased, for

they must have observed the location of his house and coal shed, with no access to the latter from Pier street; the location of the coal shed and other buildings on their own lot, leaving an alleyway leading directly to plaintiff's coal shed and necessarily showing signs of travel to it from Beaver street. They do not state that plaintiff made any reply to them when they told him he might use the alley so long as he was neighborly.

Plaintiff continued to use the alley without objection from the defendants until November 7, 1899, and we find from the evidence that plaintiff's use of the alley for the purpose of putting coal into his coal shed for a period of twenty-five years was "adverse, under a claim of right, exclusive, continuous and uninterrupted, besides being within the knowledge and with the acquiescence of the owner of the estate over which the easement is claimed," within the rules laid down in the authorities above referred to, and that his prescriptive right to such use is established.

It cannot be claimed that because the use of the alley was not daily, but only occasional, it was not continuous.

"If the claimant of an easement in real property needs its use from time to time, and so uses it, there is a sufficiently continuous use to be adverse, although it is not constant." Swan v. Munch, 65 Minn. 500 [67 N. W. Rep. 1022]; Hesperia L. & W. Co. v. Rogers, 83 Cal. 10 [23 Pac. Rep. 196].

It appears that on November 7, 1899, defendants completely obstructed said way by moving a barn thereon, which prevents plaintiff from using said way for access to his coal shed. It is the order of the court that said barn be so moved as to restore to plaintiff reasonable access to his coal shed, and defendants are enjoined from interfering with plaintiff's use of said twelve-foot strip of land in the rear of their lot for access to his said coal shed.